### CUTTING et al. v. UNITED STATES.
No. 7372.

District Court, E. D. New York.
Feb. 24, 1939.

Satterlee & Green, of New York City (Wm. R. Green, Jr., and Philip Zimet, both of New York City, of counsel), for plaintiffs.

Vine H. Smith, U. S. Atty., of Brooklyn, N. Y., James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and Julian G. Gibbs, Sp. Assts. to Atty. Gen., and Mario Pittoni, Asst. U. S. Atty., of New York City, for the United States.

CAMPBELL, District Judge.

This is an action at law for the recovery of the sum of $15,964.40 together with interest thereon paid on income received by R. Fulton Cutting during his life time for the taxable year 1929.

The said R. Fulton Cutting departed this life prior to the commencement of this action and will hereinafter be designated as the decedent.

The decedent, in the taxable year in question, had made charitable contributions in the amount of $127,645.68 and on his income tax return deducted this amount in the computation of his taxable net income. The Commissioner of Internal Revenue erroneously determined that the decedent was entitled to deduct only $59,-282.40 by reason of his charitable contributions. Helvering v. Bliss, and Helvering v. Harbison, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246, 95 A.L.R. 207.

To the difference between the amount claimed and the amount allowed $88,363.-28 is attributable a very great part of the overpayment of taxes which the Commissioner subsequently demanded and the decedent paid.

The action was tried on an agreed stipulation of facts on November 30th, 1938, and finally submitted to this Court on briefs on January 31st, 1939.

The following are the facts:

On or about March 15th, 1930, R. Fulton Cutting, the decedent, duly filed his income tax return for the calendar year 1929, under the Revenue Act of 1928, 45 Stat. 791, wherein he showed ordinary net income of $250,318.30, and a capital net gain of $480,567.84 and a total tax due thereon of $99,578.75, which tax the decedent duly paid to the Collector of Internal Revenue in quarterly installments on March 15th, June 15th, September 15th, and December 15th, 1930.

On May 3rd, 1932, the decedent received from the Commissioner of Internal Revenue an audit letter proposing an additional tax of $26,703.50. Of this sum $13,868.54 was due to items other than the deduction for charitable contributions. Relative to the adjustment for contributions, the defendant was advised that pending the results of an appeal by the Commissioner from the decision in the case of Elkins v. Commissioner, 24 B.T.A. 572, the Bureau took the position that the deduction for contributions was limited to 15% of the ordinary net income excluding capital net gain. In this letter the Commissioner stated: "If it is not your desire to protest to the determination of your tax liability as to the items other than that relating to the limitation of contributions allowable, further action on the latter will be postponed pending final court decision, providing you execute the enclosed form consenting to the assessment of $13,868.54 and forward it to the Commissioner of Internal Revenue, Washington, D. C. for the attention of IT:Ar:A:3 –MMP."

In answer to this letter the decedent, on May 16th, 1932, wrote to the Commissioner stating that he would greatly appreciate a postponement of further action on the item relating to the limitation of contributions allowable, pending a final Court decision. On May 20th, 1932, the Commissioner acknowledged the receipt of the decedent's letter. On May 28th, 1932, the Commissioner conceded that he had made certain errors in the computation of the proposed deficiency, which are set forth in his letter of May 3rd, 1932, and proposed a deficiency of $14,743.08. The deficiency proposed in this letter of May 28th, 1932, covering items other than those relating to charitable contributions, amount-

ed to $1,404.20, and the Commissioner again wrote stating that he would postpone collection of a deficiency, if any was due, relating to the limitation of contributions, provided the decedent executed Form 870.

In his letter of May 28th, 1932, the Commissioner adjusted the taxpayer's ordinary net income to $395,216.03, and his capital net gain to $465,011.95, and allowed contributions of $59,282.40, being 15% of $395,216.03.

On July 18th, 1932, the Commissioner issued to the decedent a statutory notice of deficiency is accordance with Section 272 of the Revenue Act of 1928, 26 U.S. C.A. § 272, claiming a deficiency of $14,743.08. In this letter it was stated that since the decedent had not returned Form 870 agreeing to the assessment of $1,404.20, which resulted from adjustments other than the adjustment for charitable contributions, it was necessary for the Commissioner to issue this deficiency letter. Immediately upon receipt of this letter the decedent wrote to the Commissioner stating that he was definitely under the impression that he had filed Form 870, but if he had not, that he was enclosing an executed Form 870 with this letter. This form the Bureau did receive immediately, but it was never signed by the Commissioner, because the Commissioner had issued the statutory notice of deficiency.

In reply to the decedent's letter of July 19th, 1932, the Commissioner, on July 23rd, 1932, wrote that the agreement on Form 870, which the taxpayer had enclosed in his letter of July 19th, 1932, would have been acceptable for the purpose of postponing the assessment of the remaining deficiency if it had been received by the Bureau prior to the issuance of the statutory notice of deficiency. In view of the foregoing the Commissioner advised the decedent that unless a petition was filed with the Board of Tax Appeals, within the sixty day period the entire deficiency would have to be assessed and collected, amounting to $14,743.08.

On August 3rd, 1932, the decedent addressed a communication to the Board of Tax Appeals, stating that he concurred in the determination as reflected in the Commissioner's "final statement", that he agreed to the assessment of $1,404.20 covering the other adjustments and praying that the Board grant the postponement of that portion of the deficiency relating to the adjustment for contributions pending a final Court decision. The defendant alleges and contends that this letter or simulated petition, is a petition within the meaning of the statute, that its filing conferred jurisdiction upon the Board of Tax Appeals and that thereby an appeal was taken to the Board of Tax Appeals from the Commissioner's determination of tax liability.

On July 26th, 1932, the decedent's representative, William C. Schmidt, wrote the Commissioner stating that he had filed a petition with the United States Board of Tax Appeals from the deficiency notice dated July 18th, 1932, and further requested that the matter be referred to the Special Advisory Committee. The Commissioner acknowledged receipt of this communication on August 3rd, 1932, and stated that he would give the request careful consideration.

On August 31st, 1932, the General Counsel for the Bureau of Internal Revenue, who represents the Commissioner before the Board of Tax Appeals, moved to dismiss the alledged petition of the decedent, on the ground that: (1) The appeal does not relate to any matter as to which the Board had jurisdiction under the statute; (2) that it was not an appeal from a final determination of deficiency in tax by the Commissioner; (3) that the petition contains no assignments of error, and has no copy of any 60 day letter attached, as required by the Board's Rules of Practice, and (4) that the petition is not verified, as required by the Board's Rules of Practice.

On September 13th, 1932, the decedent again wrote to the Commissioner requesting that the matter be referred to the Special Advisory Committee, and on September 22nd, 1932, the General Counsel, acting for the Commissioner, replied that his office took the position that the Board was without jurisdiction, and accordingly the matter could not be referred to the Special Advisory Committee while the jurisdictional question was pending before the Board.

On October 3rd, 1932, the decedent wrote to the General Counsel, requesting that the matter be referred to the Special Advisory Committee, if the motion to dismiss, be granted.

On October 4th, 1932, the Board entered its order of dismissal, stating that the petition did not properly state a cause of

action, and had no copy of any 60 day letter attached thereto, and that, consequently, "The Board is unable to determine from the record the amount of the deficiency determined by the Commissioner".

On October 10th, 1932, the General Counsel wrote to the decedent stating that his office considered the case closed, and that further correspondence should be addressed to the Commissioner. In line with the suggestion contained in the General Counsel's letter of October 10th, 1932, the decedent wrote to the Commissioner requesting that the matter be referred to the Special Advisory Committee, and on October 25th, 1932, the Chairman of that Committee wrote the decedent, advising him that the Committee could not take jurisdiction, unless the order of dismissal of the Board of Tax Appeals was vacated. The General Counsel refused to consent to the vacation of the decision of the Board of Tax Appeals, unless the decedent had the consent of the Special Advisory Committee, which refused to lend aid, unless the decedent had the aid of the General Counsel.

On November 11th, 1932, pursuant to the notice and demand, the decedent paid the Collector of Internal Revenue the sum of $17,062.19 which represented the additional tax of $14,743.08 together with legal interest thereon. Proper claims for refunds of the amount of $13,950.36 and $17,019.78 were timely filed, asserting the right of the decedent to a deduction from his gross income for charitable contributions made by him to an amount equal to 15% of his net income including capital net gain, before deductions for such contributions.

The Commissioner did not assert, and the Department of Justice does not now contend, that there is any dispute on the merits. There can be no doubt, therefore, that the taxpayer is entitled to recover these sums, if the Board of Tax Appeals had no jurisdiction.

On September 28th, 1932, the decedent filed his claim for the refund of $294.66 upon the ground that dividends received by him from two companys during 1929, and reported by him in his return for that year, were to the extent of $1,733.29 paid out of capital and not out of earnings. The Commissioner concedes that there has been an overpayment in this amount, and the Department of Justice does not now contend that there was no such overpayment.

The decedent is entitled to recover, if the Board of Tax Appeals had no jurisdiction.

On November 21st, 1934, the Commissioner wrote to the decedent, stating that he proposed disallowing these three refund claims, above referred to, on the ground that the taxpayer had filed a petition with the Board of Tax Appeals, and that, therefore, the decision of the District Court, in Warren Mfg. Co. v. Tait, D. C., 60 F.2d 982, controlled.

The decedent, on November 27th, 1934, in reply to this letter, wrote to the Commissioner requesting a hearing, and stating that it was at the suggestion of the Commissioner that the decedent filed a "petition" with the Board of Tax Appeals, and that he did so only in order to secure a postponement in the payment of additional taxes, pending a final Court decision affecting the computation of the allowance for charitable contributions.

A hearing was requested by the Executors of the decedent, on November 30th, 1934, in regard to the Commissioner's letter of November 21st, 1934, and on December 11th, 1934, the Commissioner wrote, arranging a conference for December 20th, 1934.

After this conference, on December 22nd, 1934, the decedent's representative, and financial advisor, Mr. William C. Schmidt, wrote to the Commissioner, requesting reconsideration of the action of the Special Advisory Committee as communicated to the taxpayer in the Committee's letter of October 25th, 1932, and further requesting that the matter be referred to the General Counsel's office.

The Commissioner, on February 5th, 1935, wrote stating that the matter should be taken up directly with the General Counsel, but, on the next day, since Mr. Schmidt was abroad, the taxpayer's office wrote the Commissioner acknowledging receipt of his letter of February 5th, 1935, and informed him that Mr. Schmidt would return the latter part of the month.

Without waiting for Mr. Schmidt's return, the Commissioner, on February 23rd, 1935, sent statutory notices of disallowance on all three refund claims to the decedent.

Faced with this situation, the Attorneys for the Estate of the decedent, on September 13th, 1935, requested the General Counsel to grant a hearing on this matter, but on September 18th, 1935, the General Counsel advised that a further hearing would be useless, and that further correspondence should be addressed to the Commissioner. However, on October 15th, 1935, the General Counsel had written to the Attorneys for the Estate, stating that after a review of the entire proceedings it could not acquiesce in any procedure designed to reopen the case before the Board of Tax Appeals, and further, it would oppose any such motion on the ground of "Statutory proscriptions and laches".

On January 30th, 1937, the plaintiffs instituted the present suit in the District Court, seeking to recover the sums aforesaid, on the ground that the decedent was under no legal obligation to pay the same.

On October 5th, 1937, the defendant answered, alleging that this Court had no jurisdiction of the proceeding, because the Board of Tax Appeals had taken jurisdiction and that, consequently, there was an election of tribunals which barred this action.

The Collector of Internal Revenue, to whom the above mentioned taxes were paid, was not in office at the time of the bringing of this suit.

The action is against the United States, for the recovery of an amount in excess of $10,000 and is brought under the Tucker Act, Title 28, Section 41, U.S.Code, 28 U.S.C.A. § 41.

The statute involved in this action is the Revenue Act of 1928, Section 272, procedure in General and Section 322, Refunds and Credits, 26 U.S.C.A. §§ 272, 322.

The question before this Court, for determination, is, did the Board of Tax Appeals, by the filing of the letter, which is called a petition, acquire jurisdiction, so as to bar recovery here?

■ On behalf of plaintiffs there is advanced the claim that the Government has overreached the decedent, but I can find no evidence of overreaching on the part of the Government, on the contrary, the officers and representatives of the Government treated the decedent with great fairness and fairly notified him of his rights

If the plaintiffs now find themselves in a position where they may be without a remedy, if the Board of Tax Appeals had jurisdiction of what the Government contends was a petition for a redetermination of the deficiency, they have no one but the financial advisor of the decedent to blame for the filing of such paper.

The Board of Tax Appeals has said of itself that "It is a tribunal of limited jurisdiction, and its powers are strictly confined to those affirmatively vested in it by the act under which it was created". Appeal of Clois L. Greene, 2 B.T.A. 148.

Also, it said of itself "The Board might go even further and hold that, since the Board is a tribunal of limited jurisdiction, the presumption, in every stage of the cause, is that the cause is without its jurisdiction unless the contrary appears from the record. Grace v. American Central Insurance Co., 109 U.S. 278, 283 [3 S.Ct. 207, 27 L.Ed. 932]. If such a rule were applied in the instant case, the proceeding must of necessity have been dismissed on the face of the petition. There is no allegation therein contained which affirmatively shows jurisdiction in the Board". Appeal of Southern California Loan Association, 4 B.T.A. 223.

■ The question, of whether the Board's jurisdiction is general or limited, does not seem to have been passed upon by any Court. The Board of Tax Appeals is not a Court, but an executive or administrative board, and exercises appellate powers judicial in character. Commissioner of Internal Rev. v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320, 324. Therefore, we may properly have recourse to the general rule. The Lessee of Grignon et. al. v. Astor et. al., 2 How. 319, 341, 11 L.Ed. 283.

In that case the Court said: "The true line of distinction between courts whose decisions are conclusive if not removed to an appellate court, and those whose proceedings are nullities if their jurisdiction does not appear on their face, is this: a court which is competent by its constitution to decide on its own jurisdiction, and to exercise it to a final judgment, without setting forth in their proceedings the facts and evidence on which it is rendered, whose record is absolute verity, not to be impugned by averment or proof to the contrary, is of the first description; there can be no judicial inspection behind the judgment save by appellate power. A court

which is so constituted that its judgment can be looked through for the facts and evidence which are necessary to sustain it, whose decision is not evidence of itself to show jurisdiction and its lawful exercise, is of the latter description; every requisite for either must appear on the face of their proceedings, or they are nullities."

The cases of Warren Mfg. Co. v. Tait, supra; Bindley v. Heiner, D.C., 38 F.2d 489; Bankers' Reserve Life Co. v. United States, Ct.Cl., 44 F.2d 1000, certiorari denied, 283 U.S. 836, 51 S.Ct. 485, 75 L.Ed. 1448; and Green v. MacLaughlin, D.C., 55 F.2d 423, cited on behalf of the defendant, are not in point, as to this question because in each of them a petition was filed for a redetermination of the deficiency and of course it made no difference in Warren Mfg. Co. v. Tait, supra, that the Government acquiesced in the motion by plaintiff in that case to dismiss.

■ The determination of the Board of Tax Appeals that it had jurisdiction does not preclude this Court in this action from determining whether it had jurisdiction.

■ Whether the Board of Tax Appeals had jurisdiction is dependent upon whether there was filed with it, within the appropriate time, a petition for redetermination of the deficiency. If such a petition was filed with the Board of Tax Appeals, then there would have been an election of remedy by the plaintiff, or its predecessor, and this action could not be maintained, because this Court would be without jurisdiction.

It has been held that the Board of Tax Appeals was without jurisdiction, unless the taxpayer filed a petition as required by the Act, asking for a redetermination of the deficiency. Edward Barron Estate Co. v. Commissioner of Internal Revenue, 9 Cir., 93 F.2d 751. And the Board of Tax Appeals, without establishing any precise rules, has, on several occasions, refused to recognize as a petition, the paper filed with it. Appeal of M. T. K. Products Co., 1 B.T.A. 924; Appeal of Eastman Gardiner Naval Stores Co., 4 B.T.A. 242; and Bankers Realty Syndicate v. Commissioner, 20 B.T.A. 612.

In order to determine whether the paper filed with the Board of Tax Appeals was a petition, within the meaning of the Statute, it seems best to set it out in full herein, as follows:

"United States Board of Tax Appeals

"R. Fulton Cutting, Petitioner, v. Commissioner of Internal Revenue, Respondent. Docket No.

"Letter from Commissioner of Internal Revenue dated July 23, 1932 attached to and made part of this petition. Said letter advises there is no authority of law whereby the Bureau may suspend or extend the sixty day period specified in the final notice of deficiency dated July 18, 1932 unless a petition is filed with the United States Board of Tax Appeals within the sixty day period specified in the final notice of deficiency dated July 18, 1932.

"Final statement dated July 18, 1932 (IT:Ar:A:3 NMP–60D) discloses deficiency of $14,743.08. Taxpayer concurs in the determination as reflected in said final statement.

"Commissioner of Internal Revenue offered to postpone assessment and collection of a portion of the above deficiency amounting to $13,338.88 pending final court decision in the case of Hallie D. Elkins, 24 B.T.A. 572, providing the taxpayer would agree to the assessment of $1,404.20, resulting in adjustments other than the adjustment for contributions involved in said court action of Hallie D. Elkins.

"The taxpayer believes that such agreement on Form 870 was forwarded upon receipt of Commissioner's letter and statement dated May 28, 1933 and prior to the final notice dated July 18, 1932.

"Upon receipt of final notice dated July 18, 1932 it was disclosed that Form 870 was not received by Commissioner, whereupon taxpayer promptly executed another Form 870 and forwarded this to the Commissioner (see attached copies of letter dated July 19, 1932 addressed to Commissioner of Internal Revenue, Treasury Department, Washington, D. C., and reply thereto from the Commissioner to the taxpayer dated July 23, 1932).

"As there is no authority under the law whereby the Bureau can suspend or extend the sixty day period specified in the final notice of deficiency dated July 18, 1932 unless a petition is filed with the United States Board of Tax Appeals within the sixty day period specified in the final notice of deficiency dated July 18, 1932, your petitioner prays—

"That the Board of Tax Appeals will grant the postponement of that portion of the deficiency as determined in accordance with the final notice dated July 18, 1932, relating to the adjustment for contributions pending final court decision in the case of Hallie D. Elkins, 24 B.T.A. 572 and the taxpayer hereby agrees to the assessment of $1,404.20 covering all the other adjustments as a result of examination for the taxable year 1929.

"(Signed)   R. Fulton Cutting
"Petitioner
"32 Nassau Street,
"New York City.

"O.
"State of New York, County of New York—ss.:

"On this 1st day of August 1932, before me personally came R. Fulton Cutting, to me known and known to me to be the person described in and who executed the foregoing instrument and he duly acknowledged to me that he executed the same.

"(Signed)   Henry Bolender
"Notary Public"

I have been unable to find any case in which what constituted a petition has been defined, but in the following cases, what the Board of Tax Appeals thought was required to constitute a petition had been set forth. Appeal of M. T. K. Products Co., supra; Consolidated Companies, Inc. v. Commissioner, 15 B.T.A. 645; Iberville Wholesale Grocery Co., Ltd. v. Commissioner, 17 B.T.A. 235; Louisiana Naval Stores, Inc. v. Commissioner, 18 B.T.A. 533.

It does not seem to me that the test is—whether the Board would have allowed corrections of defects by amendment, as no request for leave to amend was made, therefore, the question of the sufficiency of the paper filed to confer jurisdiction upon the Board must rest upon that paper.

From a reading of the paper, it cannot be determined what are the facts upon which the taxpayer relied for any relief. There is no statement of the amount of his ordinary gains or his capital gains, nor is there any statement of the total amount of his net income. There is no statement that he made charitable contributions in any amount. The letter, which was attached to the original, so-called petition, filed with the Board, even if it be considered to be incorporated in the paper by reference, contains no statement of fact.

The so-called petition, and the letter of July 23rd, attached to it, if it be considered as incorporated, by reference, would not make possible a recomputation of the decedent's income tax. There is nothing, upon which the Board could act, as the essential facts are wholly lacking, and there are no facts, which if true, would raise a question of law, as to the taxpayer's rights.

The so-called petition discloses no appeal against the assessment, as in it, it is stated "The taxpayer concurs in the determination as reflected in the final statement".

While the Board of Tax Appeals itself has been very liberal in granting amendments to papers by which it was sought to institute a proceeding before it, still, where there is no appeal against assessment, and no request for any redetermination of any deficiency, a vital requirement of pleading is entirely absent.

The jurisdiction of the Board of Tax Appeals is limited to a case where a petition is filed with the Board for a redetermination of the deficiency, whereas, in the case at bar, the paper claimed to be a petition, contains the statement that "The taxpayer concurs in the determination as reflected in the final statement". It contains no assignment of errors, and it is difficult to see what there was, for the Board, to adjudicate. The paper does not indicate that the decedent wanted to submit any question to the Board for determination. What appears is, that the decedent wanted to sit by while someone raised and litigated the controversy as to whether capital gains should be included in the income, against which the percentage limiting charitable contributions should be applied, and that, what he really wanted, was to delay action by the Commissioner until there had been a final decision by the Courts in the Elkins case.

While it is true that an appropriate prayer for relief has always been regarded as the proper part of a well-drawn complaint or petition, it has not, in later years at least, been regarded as an indispensable part. 49 Corpus Juris 175.

In the paper, as filed, the decedent said "Your petitioner prays—that the Board of Tax Appeals will grant the postponement of that portion of the deficiency as determined in accordance with the final notice dated July 18, 1932 relating to the adjustment for contributions pending final court

decision in the case of Hallie D. Elkins, 24 B.T.A. 572 * * * ".

██ This is something with which the Board of Tax Appeals had no concern, because the collection or postponement of the collection of taxes is solely within the province of the Bureau of Internal Revenue. Commissioner of Internal Revenue v. Liberty Bank & Trust Co. 6 Cir., 59 F.2d 320, 324.

It, therefore, seems to me, that the paper, as filed, lacked not only the form, but also the substance of a petition for redetermination of the deficiency and did not confer upon the Board of Tax Appeals, jurisdiction in this case.

This opinion is not changed by the decision in Continental Petroleum Co. v. United States, 10 Cir., 87 F.2d 91, because, while in that case a proper petition was not filed within the time described, the Board of Tax Appeals treated the letter as an informal petition, and with the concurrence of the taxpayer, permitted the taxpayer to file a formal petition, which presented questions over which the Board of Tax Appeals had jurisdiction, whereas, in the case at bar, all that was ever filed was the letter to which reference has been made, and which could not have been changed by amendment into a petition for a redetermination of the deficiency, without a complete departure from that which it sought the Board to consider, namely, an adjournment of the collection of the tax, but without any request for a redetermination of the deficiency, because it was expressly stated therein, that the taxpayer concurred in the determination as reflected in the final statement.

██ It is true that the Board of Tax Appeals did not dismiss the appeal for lack of jurisdiction, but did dismiss it upon other grounds, but that does not appear to me to have established the jurisdiction of the Board in the matter, because the Board could not, if jurisdiction did not appear, acquire jurisdiction, either by recital or action in the case.

██

It is significant, however, that the Government believed that the Board was without jurisdiction, because it moved to dismiss the petition on that ground.

I am not unmindful of the fact that the filing of the letter was a free and uncontrolled action of the decedent, or his representatives, who desired to obtain relief by postponement of collection of the tax which he or they might have had, if he had filed the duly executed form No. 870 required by the Commissioner, and which he had neglected to do, but the fact still remains, that the paper, as filed, was not a petition to the Board of Tax Appeals for a redetermination of the deficiency and, therefore, I do not see how I could hold that the taxpayer filed a petition, such as is described in Section 322 (c), 26 U.S. C.A. § 322(c), and as a result thereof this Court is without jurisdiction to grant relief asked by the plaintiff.

██ I realize that the purpose of the creation of the Board of Tax Appeals was to relieve the taxpayer who desired a determination of the deficiency found by the Commissioner, from the necessity of paying the tax and then bringing an action for its recovery which was of great benefit to the taxpayer, but, still, with all that, Congress required the filing, by the taxpayer, with the Board of Tax Appeals, of a petition for the redetermination of the deficiency, in order to give that Board jurisdiction. That was not met by filing a paper, which raised no question calling for a redetermination of the deficiency but was simply a request for a postponement of the time of payment, a matter over which the Board of Tax Appeals had no jurisdiction or control.

The plaintiffs are entitled to a judgment against the defendant, as stipulated. in the sum of $15,964.80 with interest on $14,670.-14 from November 11th, 1932, and on $294.66 as to each quarter thereof, from March 15th, June 15th, September 15th and December 15th, all of 1930, together with costs of this action.